UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DENISE MARIE T.-W.,[1]

                       Plaintiff,                  **DECISION AND ORDER**

v.                                                    1:22-cv-00327 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

       This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [5, 6].[2] The parties have consented to my jurisdiction [8]. Having reviewed the parties' submissions [5, 6, 7], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

       The parties' familiarity with the 1,357-page administrative record [4] is presumed. In August of 2019, plaintiff filed an application for DIB, alleging disability beginning May 22, 2019 due to bipolar, anxiety, depression, and attention deficit hyperactivity disorder ("ADHD").

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

Administrative Record [4] at 13, 281, 299. After her application was denied, an administrative hearing was conducted before Administrative Law Judge ("ALJ") Francis Hurley on February 25, 2021, at which plaintiff, who appeared with an attorney, testified. Id. at 70-109 (transcript of hearing). At the conclusion of the hearing, ALJ Hurley scheduled a supplemental hearing for the purpose of hearing from a medical expert and permitting plaintiff an opportunity to submit a medical opinion from her treating providers. See id. at 106-108. The supplemental hearing took place on May 27, 2021. Id. at 34-69. The plaintiff, who appeared with her attorney, a medical expert (Debora Ann Pollack, M.D.), and a vocational expert (Ruth Baruch) testified.

Based upon the medical evidence and testimony, ALJ Hurley found that plaintiff's severe impairments were "cervical and thoracic spine disc protrusions, multiple sclerosis, depressive and anxiety disorders, and [ADHD]". Id. at 16. He considered the four broad categories of "Paragraph B" mental functioning and determined that plaintiff had moderate limitations in all four categories of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. Id. at 17-19.

In order to determine plaintiff's non-exertional residual functional capacity ("RFC")[3], ALJ Hurley considered functional assessments from consultative examiner Janine Ippolito, Ph.D. and state agency medical consultants L. Dekeon, Ph.D. and K. Lieber-Diaz, Psy.D.[4]

---

[3] Because plaintiff's motion focuses only on the ALJ's treatment of the evidence supporting her mental health conditions, I address only those non-exertional limitations incorporated into the RFC.

[4] Dr. Dekeon's and Lieber-Diaz's first names do not appear in the record.

On November 5, 2019, Dr. Ippolito conducted a psychiatric evaluation, including a mental status examination. Id. at 1163-66. She also considered plaintiff's functional abilities, opining that plaintiff had:

1) no evidence of limitations understanding, remembering, and applying simple and complex directions and instructions; using reason and judgment to make work-related decisions; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions;

2) moderate limitations interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; and sustaining an ordinary routine and regular attendance at work; and

3) moderate to marked limitations regulating emotions, controlling behavior, and maintaining well-being.

Id. at 1165.

After reviewing the evidence in the file up to the date of his review, November 27, 2019, Dr. Dekeon opined that plaintiff had:

1) no limitations in the functional category of understanding and memory;

2) moderate limitations in some of the functions falling under the category of ability to concentrate, persist, and maintain pace;

3) moderate limitations in some of the functions falling under the category of interacting with others; and

4) moderate limitations in some of the functions falling under the category of adapting and or managing herself.

Id. at 119-21.

Dr. Lieber-Diaz reviewed the file evidence at the reconsideration level on May 13, 29020 and considered several additional medical exhibits, including records from Dent Neurological Group LLP. Id. at 125-26, 133. After review of additional medical evidence, Dr. Lieber-Diaz opined that plaintiff had:

-3-

      1)   no limitations in the functional category of understanding and memory;

      2)   moderate limitations in some of the functions falling under the category of ability to concentrate, persist, and maintain pace;

      3)   moderate limitations in some of the functions falling under the category of interacting with others; and

      4)   some limitation in adapting and or managing herself.

Id. at 135-37.

Based upon the functional opinions, the medical evidence, and other evidence in the file, ALJ Hurley incorporated into plaintiff's RFC several limitations related to plaintiff's mental health conditions:

> "She could understand and remember simple instructions. She could have occasional, brief, superficial contact with supervisors, coworkers, and the general public. She could sustain attention and pace on simple tasks for 2-hour periods throughout the course of an 8-hour workday/40-hour workweek or equivalent schedule with customary breaks. She could adapt to simple changes in work setting and routines. She would be off-task 10% of the workday."

Id. at 20. He found both Dr. Dekeon's and Dr. Lieber-Diaz's opinions "generally persuasive as to having no more than moderate limitations/no marked or extreme limitations, although [she found] that based on the evidence as a whole as well as considering the evidence in the light most favorable to the claimant she also has moderate limitation in understanding, remembering, and applying information unlike opined by either of these doctors". Id. at 25.

ALJ Hurley explained that, although these doctors "did not have the opportunity to review the entire record, their opinions still cite to supporting evidence of record such as the largely normal findings during consultative psychological examination as well as the array of activities that the claimant has reported performing despite her underlying mental impairments".

Id. at 25. ALJ Hurley then summarized the information from the record that he cited earlier in his opinion. Id. at 25-26.

ALJ Hurley found Dr. Ippolito's opinion "partially persuasive". Id. at 26. He explained that "[m]arked limitation in areas of adapting/managing oneself as opined by this doctor is not supported by the evidence as a whole, including for example the *array* of activities that the claimant has reported performing both inside and outside of her home since the alleged onset date despite her underlying mental impairments as well as the recent mental health treatment records reflecting her reports of improved symptoms". Id. (emphasis in original).

Based upon the RFC and the vocational expert's testimony, ALJ Hurley determined that plaintiff was able to perform jobs that exist in significant numbers in the national economy, and therefore was not disabled, as defined in the Social Security Act. Id. at 27-28. The Appeals Council found no basis to change ALJ Hurley's decision. Id. at 1-4. Thereafter, this action ensued.

Plaintiff argues that the RFC is not supported by substantial evidence for two reasons. She argues that the ALJ:

1. failed to reconcile the RFC with the specific limitations noted in Dr. Dekeon's and Dr. Lieber-Diaz's opinions (Plaintiff's Memorandum of Law [5-1] at 14-19); and

2. failed to address the supportability and consistency factors with respect to Dr. Ippolito's opinion (id. at 19-25);

The Commissioner responds that ALJ Hurley's decision is supported by substantial evidence in the record, and adequately explained. Commissioner's Brief [6-1] at 8-17. The Commissioner argues that plaintiff's arguments are more accurately characterized as requests to re-weigh the evidence. Commissioner's Brief [6-1] at 18-22. Further, the Commissioner

points out that plaintiff failed to satisfy her burden to produce evidence that she was more limited than the RFC. Id. at 21.

For the following reasons, I agree with the Commissioner.

## DISCUSSION

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B.     The RFC is Supported by Substantial Evidence**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta, supra. In doing so, an ALJ may not "arbitrarily substitute [his or her] own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order). However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).

Although ALJ Hurley's analysis might have been stated with more clarity, his decision, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted). He neither mischaracterized nor cherry-picked the record to support his conclusions. Therefore, I find that his conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Hurley's reasoning "as adequate to support his conclusion". Consolidated Edison Co., 305 U.S. at 229. The substantial evidence standard means that, "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*". Brault, 683 F.3d at 448 (emphasis in original).

Plaintiff's arguments deal primarily with the ALJ's analysis of the opinion evidence. I find that the ALJ accurately discussed the record evidence, and properly applied the supportability and consistency factors to the opinions in order to arrive at his conclusions with respect to plaintiff's RFC.

### 1. The ALJ's Treatment of Dr. Dekeon's and Dr. Lieber-Diaz's Opinions

Plaintiff argues that, with respect to the opinions of State Agency physicians Dr. Dekeon and Dr. Lieber-Diaz, the ALJ erred by failing "to reconcile the RFC with [their] more limiting opinions, despite finding these opinions 'generally persuasive.'" Plaintiff's Memorandum of Law [5-1] at 14. Specifically, she argues that the ALJ failed to include in the RFC any off-task limitations accounting for the moderate limitations they opined as to specific functional abilities under the four broad categories of mental functioning:

> "[T]he multitude of moderate limitations opined to . . . were inconsistent with the RFC, which failed to include any limitations pertaining to [plaintiff's] psychological inability to maintain a consistent schedule or remain on task - as the RFC notably did contain an off-task limitation, but this was only in relation to the neurological/physical impairments, as testified to by the medical expert."

Id. at 18.

First, as noted by the Commissioner, plaintiff failed to identify any treatment note, medical opinion, or other evidence indicating that she needs to be off-task due to her mental health conditions greater than 10% of the time.  See Commissioner's Brief [6-1] at 22.  "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

Moreover, the RFC incorporates the moderate functional deficits noted opined by Drs. Dekeon and Lieber-Diaz.  Plaintiff argues that the ALJ erred when he "focused on the four B criteria domains while ignoring the rest of these doctors' opinions, despite finding them generally persuasive and supported by the record".  Plaintiff's Memorandum of Law [5-1] at 18.  However, ALJ Hurley's analysis of the four broad categories of mental functioning subsumed and included the more specific abilities identified by Dr. Dekeon and Lieber-Diaz.  This is made plain through analysis of the description of each Paragraph B functional domain in the regulations and by the forms completed by Drs. Dekeon and Lieber-Diaz.  The appendix to the regulations contains examples of activities that illustrate the natures of each Paragraph B functional area.  For example:

> "E.  What are the paragraph B criteria?
> . . .
> 3. Concentrate, persist, or maintain pace (paragraph B3).  This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate.  Examples include:  Initiating and performing a task that you understand and

> know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning."

20 CFR Pt. 404, Subpt. P, App. 1, 12.00E.  Each of the more specific abilities identified by Drs. Dekeon and Lieber-Diaz is an example of the types of specific functional abilities included in each broad, Paragraph B functional ability.  This is highlighted by the structure of the forms they completed.  The form first asks the doctor whether the claimant has a limitation in one of the broad Paragraph B functional categories.  For example, "[d]oes the individual have sustained concentration and persistence limitations?"  Administrative Record [4] at 119, 135.  Immediately thereafter, the form prompts the doctors to "[r]ate the individual's sustained concentration and persistence limitations" then lists specific functional abilities that are drawn from the examples listed under this broad functional category in the listings describing the Paragraph B criteria.  For example, with respect to "concentration and persistence" limitations, the form asks whether plaintiff is limited in the ability to:

- carry out very short and simple instructions (*compare to* performing a task you understand and know how to do, above);

- carry out detailed instructions (same);

- maintain attention and concentration for extended periods (*compare to* ignoring or avoiding distractions while working, above);

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (*compare to* sustain regular attendance at work, above);

- sustain an ordinary routine without special supervision (*compare to* sustain an ordinary routine at work, above);

- work in coordination with or in proximity to others without being distracted by them (*compare to* ignoring or avoiding distractions while working, above);

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*compare to* working a full day without needing more than the allotted number or length of rest periods during the day, above).

See id. at 120, 135-36; *compare to* 20 CFR Pt. 404, Subpt. P, App. 1, 12.00E.

Accordingly, the ALJ's analysis of the four broad categories of mental functioning subsumed each of the narrower, more specific abilities identified by Drs. Dekeon and Lieber-Diaz in their analyses. Further, during the RFC analysis, "[t]he regulations make clear that those factors are only to be applied in determining the severity of a mental impairment, the third step prescribed by the disability evaluation guidelines, not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps." Whipple v. Astrue, 479 Fed.Appx. 367, 369 (2d Cir. 2012) (Summary Order). I find, therefore, that ALJ Hurley was not required to specifically address each of the examples in his decision.

In any event, even if ALJ Hurley erred by failing to discuss each example in his analysis, that error was harmless because the RFC accounted for plaintiff's moderate limitations in each of the four broad functional abilities, which includes limitations in each of the more detailed examples. Moderate limitations in some or all areas of mental functioning may be accounted for in an RFC by limiting a plaintiff to simple, routine work and by limiting plaintiff's interaction with others. Uplinger v. Berryhill, 2019 WL 4673437, *7 (W.D.N.Y. 2019) ("the ALJ appropriately incorporated marked limitations in dealing with stress and moderate limitations in

maintaining a schedule into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with supervisors and occasional interaction with coworkers and the general public"); *see also* Shannon v. Berryhill, 2018 WL 6592181, *3 (W.D.N.Y. 2018) ("[t]here is significant case law indicating that the ALJ's limitation of Plaintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for her [moderate] limitations for performing activities within a schedule and maintaining regular attendance"); Landers v. Colvin, 2016 WL 1211283, *4 (W.D.N.Y. 2016) ("[p]laintiff fails to demonstrate that these moderate limitations require the finding of a more limited RFC. The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance"). It is well-settled that up to moderate limitations of a plaintiff's ability to regulate emotions, control behavior, and maintain well-being are "consistent with" an RFC limiting plaintiff to "simple, routine, and repetitive tasks" and "occasionally interacting with supervisors, coworkers, and the public". Michelle K. v. Commissioner, 527 F.Supp.3d 476, 483 (W.D.N.Y. 2021).

      Here, the RFC contains largely identical limitations. It limits plaintiff to work involving understanding and remembering only "simple instructions", with only "occasional, brief, superficial contact with supervisors, coworkers, and the general public", and work that involves only "simple changes in work setting and routines". Administrative Record [4] at 20. In addition, plaintiff is expected to be "off-task 10% of the workday". Accordingly, plaintiff's limitations functional areas are adequately accounted for by the RFC.

### 2. The ALJ Adequately Considered the Supportability and Consistency Factors with Respect to Dr. Ippolito's Opinion

With respect to Dr. Ippolito's opinion, plaintiff argues that the ALJ failed "to specifically and properly consider the supportability and consistency factors in rejecting the more limiting portion of this opinion". Plaintiff's Memorandum of Law [5-1] at 19. She argues that ALJ Hurley "did not cite to any evidence which supported" his conclusions. However, the ALJ's analysis of Dr. Ipolito's opinion - and his opinion as a whole - demonstrates that he considered both factors. ALJ Hurley found that the "[m]arked limitation" found by Dr. Ippolito "in areas of adapting/managing oneself . . . is not supported by the evidence as a whole, including for example the *array* of activities that the claimant has reported performing both inside and outside of her home since the alleged onset date despite her underlying mental impairments as well as the recent mental health treatment records reflecting her reports of improved symptoms". Administrative Record [4] at 26 (emphasis in original). The ALJ also considered whether Dr. Ippolito's findings were "consistent with the evidence as a whole" and supported by her own examination. Id. As examples of the type of evidence to which he is referring, ALJ Hurley states:

> "This includes findings from this doctor that were largely normal aside from varying moods/emotional distress. This includes mental health treatment records repeatedly showing her to be well groomed, cooperative, and oriented with normal thought, normal memory, and generally able to follow along without difficulty. This includes her own reports in the recent mental health treatment records of improving symptoms and no medication side effects. This includes the array of activities that she reported performing since the alleged onset date despite her underlying mental impairments".

Id.

Although the ALJ did not incorporate citations to the record into this passage, it clearly references his detailed discussion of the record evidence concerning plaintiff's mental

health treatment, and her activities, in the preceding two pages, which includes multiple citations to the record and reference to specific documents and treatment notes. See id. at 24-25.

Plaintiff claims that the ALJ's rejection of the up-to-marked limitations in Dr. Ippolito's opinion "reeks of cherry-picking", but she does not cite any treatment note or other evidence that shows the ALJ "cherry-picked" specific language from the treatment notes or other evidence, while ignoring evidence of significantly greater limitation. See Plaintiff's Memorandum of Law [5-1] at 23. Instead, plaintiff points only to her own testimony concerning the "qualifications" she "placed on her ability to engage" in daily activities and part time work. Id. at 22-23.

However, the ALJ was entitled to view the record evidence as a whole and specifically found that, when considered in the context of the record evidence, "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record". Administrative Record [4] at 21. "[A]n ALJ may reject plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability." Shania W. v. Commissioner, 2021 WL 3131182, *5 (W.D.N.Y. 2021). "[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence". Patrick R. v. Commissioner of Social Security, 2022 WL 17247242, *3 (W.D.N.Y. 2022). Moreover, the ALJ was sufficiently specific in his analysis that it is not possible to say here that "no reasonable fact finder could have reached the ALJ's conclusions based on the evidence in the record." Cheatham, supra.

The ALJ outlined the evidence of plaintiff's mental health treatment during the period under consideration. He discussed Dr. Ippolito's November 2019 examination report, along with plaintiff's treatment records from 2019 through 2021. See Administrative Record [4] at 24-26. ALJ Hurley accurately summarized the plaintiff's treatment notes, and the findings on

examination contained in the reports, such as "generally unremarkable findings, aside from some mildly diminished attention"  See id. at 24 (referring to id. at 1175 (January 29, 2020 treatment note showing normal findings on mental status examination except for "[m]inimally diminished concentration"), 1216 (June 4, 2020 telephone treatment note with normal findings on mental status examination except for "mildly diminished" attention and concentration). ALJ Hurley also considered that plaintiff "collected unemployment payments after the alleged onset date through 3rd quarter 2020 . . . which in order to receive she would have had to certify that she was willing and able to work". Id. at 25. The ALJ also noted that plaintiff's last psychiatric treatment record in the file was from September of 2020 with "no evidence of any ongoing dedicated mental health treatment since then". Id. at 24.

Although plaintiff argues that she "reported being fired from multiple jobs during the relevant period due to absences caused by her mental health impairments", those jobs were skilled positions as a paralegal and a business teacher. Plaintiff's Memorandum of Law [5-1] at 24, see also Administrative Record [4] at 26-27 (describing plaintiff's past work as a paralegal and business teacher). Due to her limitations and restrictive RFC, the ALJ concluded that plaintiff was not capable of performing her past work. Administrative Record [4] at 26-27. Instead, plaintiff could perform unskilled jobs, like "small parts assembler", "price marker", and "hand packer". Id. at 32-33.

Finally, plaintiff argues that ALJ Hurley improperly relied upon cycles of improvement in plaintiff's condition to support his findings. Plaintiff's Memorandum of Law [5-1] at 25. However, she fails to identify in the record any evidence of cycles of debilitation or decompensation that the ALJ overlooked. Id. Once again, plaintiff points only to her own testimony that any improvement in her condition "was because she was not working at the time,

clearly supporting the notion that her condition would deteriorate if she were to return to work". Id.  However, as discussed above, the ALJ agreed that plaintiff would be unable to return to her prior work, and limited plaintiff in the RFC to work involving only "simple instructions", limited interactions with others, and only "simple changes in work setting and routines".  Administrative Record [4] at 20.

Plaintiff does not indicate how or why she would be unable to perform work within the RFC due to the moderate limitations she experiences in these functional areas. "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman, 2020 WL 473618 at *6.  I agree with the Commissioner that plaintiff failed to do that here.  See Commissioner's Brief [6-1] at 27.  When read as a whole, the decision satisfies the ALJ's obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T., 2020 WL 4504987 at *2 (internal quotation omitted).

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [6] is granted, and plaintiff's motion [5] is denied.

 **SO ORDERED**.

Dated: September 12, 2024

/s/ *[signature]*
JEREMIAH J. MCCARTHY
United States Magistrate Judge